IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Nanette Sharee Sarcinella, | ) | Civil Action No. 8:16-cv-1216-MGL-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Nancy A. Berryhill, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB"). For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

On April 10, 2012, Plaintiff[2] filed an application for disability insurance benefits ("DIB"), alleging an onset of disability date of September 15, 2007. [R. 50–68.] The claim was denied initially and upon reconsideration by the Social Security Administration ("the

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]Throughout the medical records, Plaintiff is referred to as Nanette Stevenson. At some point before the hearing with the ALJ, Plaintiff changed her name. [R. 33–34.]

Administration"). [*Id.*, R. 69–92]. Thereafter, the claimant filed a written request for hearing and, on June 11, 2014, he appeared with an attorney and testified at a hearing before Administrative Law Judge ("ALJ") Edward Morriss. [R. 31–49.]

The ALJ issued a decision on July 17, 2014, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 13–25.] At Step 1,[3] the ALJ found Plaintiff last met the insured status requirements of the Act on December 31, 2012, and had not engaged in substantial gainful activity since the alleged onset date of September 15, 2007, through the date last insured of December 31, 2012. [R. 15, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe combination of impairments: degenerative disc disease (DDD) and fibromyalgia. [R. 21, Finding 3.] At Step 3, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [R. 17, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found as follows:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work (light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, as well as sitting, standing, or walking for 6 hours each in an 8-hour workday) as defined in 20 CFR 404.1567(b) except that she can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs, as well as occasionally stoop, kneel, crouch, and crawl. She can frequently balance.

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

[R. 18, Finding 5.] Based on this RFC, the ALJ determined at Step 4 that Plaintiff was unable to perform her past relevant work as a veterinarian technician. [R. 24, Finding 6.] However, based on Plaintiff's age, education, work experience, and RFC, the ALJ determined that a finding of "not disabled" was appropriate under Medical-Vocational Rule 202.21. [R. 24, Finding 10.] Accordingly, the ALJ concluded Plaintiff had not been under a disability, as defined in the Act, from September 15, 2007, through the date last insured, December 31, 2012. [R. 25, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision, and on February 17, 2016, the Appeals Council declined. [R. 1–3.] Plaintiff filed the instant action for judicial review on April 19, 2016. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends that errors by the ALJ require the decision to be reversed and remanded for further administrative proceedings. [Doc. 16.] Specifically, Plaintiff alleges the ALJ's RFC analysis is not supported by substantial evidence because the ALJ failed to perform a function by function analysis of the evidence related to Plaintiff's ability to perform work-related activities and the credibility analysis was flawed. [*Id*. at 11–17.] Also, Plaintiff contends that the ALJ failed to sufficiently weigh and discuss the medical and other opinion evidence in the record. [*Id*.]

The Commissioner contends the decision is supported by substantial evidence and should be affirmed. [Doc. 17.] Specifically, the Commissioner argues that the evidence did not support any functional limitations through the date last insured, such that Plaintiff could perform work. [*Id*. at 8–10.] The Commissioner asserts that a function by function analysis of the RFC would not have changed the RFC determination [*id*. at 10–14], the ALJ

sufficiently assessed Plaintiff's credibility [*id*. at 14–16], and the ALJ adequately considered the medical source evidence [*id*. at 16–17].

<u>**STANDARD OF REVIEW**</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to

4

determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual

functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).   Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).   On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.   *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").   After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.   *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).   A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is

6

material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national

economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A. *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B. *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings

as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

**C.**     ***Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

**D.**     ***Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

**E.**     ***Other Work***

---

[5]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform

---

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  § 404.1569a(c)(1).

specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is

unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for

making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V. Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the

ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable

> objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI. Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique

advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Summary of Relevant Medical History**

Plaintiff applied for disability insurance benefits based on allegations of fibromyalgia, attention deficit disorder, pre diabetes, arthritis, irritable bowel syndrome with constipation, migraines, DDD, pain in the left foot (shooting pain), weak on right side of body, bursitis in both hips, dyslexia, bulging discs, and bipolar. [R. 50.] The ALJ determined that Plaintiff's obesity, bipolar disorder, and anxiety had been controlled with medication and other conservative measures and had not resulted in any limitation of her ability to perform work-related activities. [R. 15–16.] Thus, the ALJ found that those were not severe impairments, and he found the only severe impairments were DDD and fibromyalgia. [*Id*.] Plaintiff does not appear to contest this finding.

On May 8, 2007, an MRI of Plaintiff's cervical spine showed a left paracentral disc bulge and annular tear at C6-C7 with mild to moderate left-sided canal stenosis. [R. 262–63.]  There was no apparent mass effect on the spinal cord or the exiting nerve roots. [*Id*.] On May 23, 2007, Plaintiff was examined by Neurologist Dr. Stephen E. Rawe (Dr. Rawe). [R. 288–90.] She complained of neck pain and headaches that had been intensifying; she also had pain in the right shoulder going down her arm, stopping at the elbow. [*Id*.] She was taking Soma, Naproxyn, and Lortab for pain relief. [*Id*.] On exam, she had painful range of motion in the cervical spine, but no weakness. [*Id*.] Dr. Rawe found

no objective findings to indicate radiculopathy or myelopathy; he noted a disc herniation at C6-7 but was unsure whether this was responsible for her pain; additional images were ordered, and steroid injections would be considered. [*Id*.] Plaintiff underwent cervical epidural steroid injections (CESI) at C6-7 on May 25, 2007, and June 19, 2007. [R. 267–68, 270–71.]

On June 19, 2007, Plaintiff returned to Dr. Rawe, and he noted that cervical steroid injections had resulted in significant relief for several weeks; the pain had returned; exam was as before; MRI had showed a herniation that "may be symptomatic"; she was to rent a neuromuscular stimulator. [R. 292.] She received another CESI on July 6, 2007. [R. 255.]

On July 24, 2007, Plaintiff returned to Dr. Rawe and reported no significant relief overall after three epidural steroid injections; her pain was worse in her neck and trapezius muscle. [R. 293.] On exam, Plaintiff had painful range of motion of the cervical spine, some tenderness around the trapezius muscle, no obvious weakness, reflex or sensory abnormalities in the upper or lower extremities. [*Id*.] She had been diagnosed with fibromyalgia in the past, and Dr. Rawe referred her to Dr. Fink for evaluation and treatment of fibromyalgia. [*Id*.]

Although they are somewhat difficult to read, from May 24, 2006, through March 21, 2008, Dr. Kurtzman treated Plaintiff for depression and anxiety. [R. 272–87.]

Plaintiff was seen at Low Country Rheumatology on September 10, 2007, by Dr. Gregory Niemer. [R. 315–320.] She reported neck and shoulder pain; review of systems was significant for constipation, headaches, fatigue, and muscle weakness, as well as poor quality sleep. [*Id*.] She was already treated for ADD and bipolar disorder; diagnosis was

fibromyalgia syndrome (FMS), no evidence of rheumatoid arthritis, lupus or other disease; she was prescribed Lyrica. [*Id*.]

On September 17, 2007, Dr. Michael F. Alden, D.C., wrote a letter regarding Plaintiff in which he noted that she had been his patient since 1999 due to neck pain and related degenerative processes of the cervical spine and related areas. [R. 252.] He opined that this was "complicated by the presence of Fibromyalgia Syndrome" and that, considering her chronic conditions, Plaintiff was a candidate for disability. [*Id*.]

On October 9, 2007, Dr. Niemer noted 16 trigger points, as well as pain with range of motion (ROM) in the spine. [R. 314.] On November 6, 2007, Dr. Niemer noted 16 tender trigger points, pain in the right hip and knee and neck, but Plaintiff reported that she was sleeping fairly well. [R. 313.] Complaints at November 30, 2007, and December 10, 2007, visits were similar with complaints of right hip pain, neck pain, and poor quality sleep. [R. 310–11.]

An MRI of the right side of the pelvis on February 26, 2008, showed minimal right-sided trochanteric bursitis. [R. 258.] On the same date, an MRI of the lumbar spine showed a mild broad-based bulge eccentric to the left which extended into the left neural foramen at L4-5; combined with facet hypertrophy, there was moderate foraminal narrowing. [R. 260–61.]

On April 2, 2008, Dr. Niemer noted that Plaintiff had received a steroid shot Friday, but her pain had returned by Sunday. [R. 306.] Plaintiff received a lumbar epidural steroid injection (LESI) at L4-5 on March 13, 2008, and again on March 28, 2008. [R. 256–57.]

On June 13, 2008, Plaintiff complained to Dr. Niemer of continued neck and shoulder pain, tingling in her hands. [R. 303.] On July 17, 2008, Plaintiff reported to Dr.

Rawe that she continued to be bothered by pain; she could not tolerate Lyrica and was taking Opana for pain. [R. 294.] Dr. Rawe reviewed her lumbar MRI; he did not feel there were any significant disk abnormalities that would be responsible for her pain, nor did he believe surgery was needed; he recommended continued conservative pain management. [*Id*.]

On September 11, 2008, Plaintiff underwent a lumbar medial branch block on the right at L-4-5 and L5-S1. [R. 380.] On February 16, 2009, Plaintiff told Dr. Niemer that her lower back and hip pain was so bad that she could not bend over, and the pain was worse when she moved. [R. 300.] She was referred to Dr. Tavel. [*Id*.]

On August 10, 2009, Plaintiff reported to Dr. Niemer that she was still in pain but trying to walk one block per day. [R. 297.]

Images of Plaintiff's cervical spine on December 23, 2009, showed mild midcervical spondylosis and upper cervical dextroscoliosis. [R. 334.] The same day, Plaintiff was examined by Dr. Adebola Rojugbokan (Dr. Rojugbokan) at the request of the state agency. [R. 338–44.] She was referred to the comprehensive orthopedic exam for complaints of fibromyalgia, degenerative disc disease, and bursitis of the right hip. Dr. Rojugbokan was provided with a record from Bon Secours St. Francis Hospital and a radiologic evaluation from Dr. Stephen Rawe. Plaintiff reported neck pain which was initially treated conservatively. Her pain persisted and imaging of the hip and cervical spine showed mild trochanteric bursitis, and a large disc bulge and annular tear at C6-7, respectively. Having been told she was not a surgical candidate, Plaintiff had been referred to a rheumatologist who had ordered several steroid injections and placed her on multiple medications. She was then referred to Dr. Tavel, a pain management specialist. She had been diagnosed

with fibromyalgia and placed on Lyrica. Plaintiff complained to Dr. Rojugbokan of lower back and shoulder pain. She could stand for only 15 to 20 minutes and lift only about 20 pounds. She estimated she could walk one and a half blocks. [*Id*.]

On exam, Dr. Rojugbokan noted tenderness to palpation, diminished strength and reduced range of motion in both the lumbar and cervical spines. [*Id*.] In addition, there was tenderness and diminished strength in the shoulders, elbows, wrists, knees, and hips. [*Id*.] Dr. Rojugbokan's impression was fibromyalgia, degenerative joint disease, bipolar, and depression. [*Id*.] Dr. Rojugbokan's impression was that Plaintiff was capable of "walking, listening, seeing, hearing, and reasoning." [*Id*.]

On July 2, 2010, Plaintiff reported to the Summerville Medical Center Emergency Department (ED) for neck pain. [R. 545–53.] On exam, she was in distress, exhibited neck tenderness, abnormal inspection, painful range of motion, moderate spasm in the left side of neck. [*Id*.] A CT scan was unremarkable; impression was acute cervical strain; and she was given Valium. [*Id*.]

Plaintiff followed up with Dr. Tavel on July 6, 2010, following her ER visit. [R. 379.] Her neck pain was 9/10 on pain scale. [*Id*.] Dr. Tavel increased her Zanaflex and another CESI was recommended; Plaintiff also received a cervical traction unit. [*Id*.]

On March 6, 2012, at her appointment with Dr. Niemer, Plaintiff complained of back pain, and Dr. Niemer noted 11/18 tender points. [R. 619.] She returned to Dr. Niemer on May 7, 2012. [R. 616.]

On July 16, 2012, Dr. Niemer noted 14/18 tender trigger points, and Plaintiff complained of back pain. [R. 615.]

An MRI on Plaintiff's lumbar spine dated August 3, 2012, showed mild lumbar dextroscoliosis, Schmorl's nodes at T11-T12, moderate spinal stenosis at L4-5 with moderate right recess stenosis due to a synovial cyst and moderately severe right foraminal narrowing, and mild foraminal narrowing at L2 through L4. [R. 515.]

On August 14, 2012, Dr. Dana Simpson (Dr. Simpson) saw Plaintiff for a consultative physical examination. [R. 518–24.] Dr. Simpson reviewed the 2007 cervical spine MRI, the 2008 pelvic MRI, the 2008 lumbar spine MRI, 2009 cervical spine x-ray, Low Country Rheumatalogy notes from June 2011 and May 2012, and Dr. Rojugbokan's 2009 evaluation. Plaintiff complained to Dr. Simpson of continuous back pain since 2006 and she currently rated it a 3/10; bending exacerbated this. [*Id*.] Her children helped her with housework. She estimated she could stand for 10 minutes and sit for 30. Opana helped "somewhat." Her fibromyalgia pain was concentrated in her back and neck. She experienced 2-3 migraines per month, and suffered from continuous constipation due to IBS. She reported difficulty sleeping due to pain. [*Id*.]

On exam, Dr. Simpson noted that Plaintiff spoke on her cell phone without difficulty, and able to move her neck around fine when putting items in her purse, reaching for her phone and texting. [*Id*.] Plaintiff's speech was slurred at times and her gait was slow and shuffled. [*Id*.] Range of motion testing was restricted in the hips and lumbar spine; the right hip was noted to sit higher than the left and trace edema was noted in both hands; she needed assistance rising form a squatting position. [R. 518–19.] Dr. Simpson noted that Plaintiff's pain would limit her ability to work full-time, but opined that, "there may be other relatively sedentary jobs that she can do." [R. 524.] Dr. Simpson also gave the opinion that Plaintiff's pain limits her ability to stoop, bend, lift more than 10-20 pounds, or sit/stand for

22

longer than 20 to 30 minutes; her primary issue was pain in the neck and back caused by fibromyalgia, DJD, and scoliosis. [*Id*.]

Plaintiff saw Dr. Niemer on November 1, 2012, and reported worsening neck pain radiating to her right shoulder and causing headaches; she displayed decreased range of motion in the cervical and lumbar spines, negative straight leg raise, and 15/18 tender points; she was given an injection. [R. 608–13.]

On November 30, 2012, Plaintiff was given a psychological evaluation by Cashton B. Spivey, Ph.D., at the request of the state agency. [R. 568–71.] Plaintiff's Mini-Mental exam was normal, and Dr. Spivey's diagnosed bipolar disorder (by history), anxiety disorder, spine and hip pain, and a GAF of 55. [*Id*.]

On January 7, 2013, Plaintiff was seen as a new patient at the Southeastern Spine Institute by Dr. Steven Poletti, referred by Dr. Niemer. [R. 589–91.] She complained of a three year history of back, hip, and leg pain; she had received occasional trigger point and steroid injections without significant relief and rated 8/10 on a pain scale; she reported her pain was worse with activity. [*Id*.] Physical therapy and chiropractic care had also failed to relieve her pain; she described her pain as aching and stabbing and lower back pain with pins-and-needles sensation radiating down both legs to her feet; she reported IBS, joint pain, headaches, anxiety, depression, insomnia, and prediabetes. [*Id*.]

On exam, straight leg raising was somewhat positive on the left; she was ambulatory with non-antalgic gait in no acute distress. [*Id*.] Dr. Poletti ordered imaging of the cervical and lumbar spines; he did not feel she had a surgical issue, and she planned to try a back support brace; he noted her symptoms were fibromyalgia-type pattern. [*Id*.] Dr. Poletti gave the opinion that Plaintiff would not be capable of sitting for any extended period of time and

noted that her high-dose narcotic medications interfered with her ability to retrain for sedentary work. [*Id*.]

On January 28, 2013, Plaintiff complained to Dr. Niemer of low energy with chronic pain and poor sleep; she was advised to continue working on process-free diet and referred to Dr. Poletti regarding the pain in her lumbar spine. [R. 605–07.] On March 14, 2013, Plaintiff returned to Dr. Poletti's office wearing a lumbar support brace; she denied any worsening of symptoms and stated some improvement. [R. 592.] On exam, Plaintiff was stable; she had negative straight leg raising, and no worsening focal muscle or neurological deficits; plan was to continue back brace, to continue seeing Dr. Niemer for pain medications, and to return as needed. [*Id*.]

Plaintiff told Dr. Niemer on April 17, 2013, that her back pain was better with the brace; her bilateral hip pain increased with walking; she had continued moderate to severe fatigue on a daily basis. [R. 600–04.] In July 2013, Plaintiff saw Dr. Niemer and reported increased knee pain affecting daily activities and sleep; neck and back pain, occurring daily and severe at times; increased fatigue; she displayed 17/18 trigger points, decreased range of motion cervical and lumbar spine, and tenderness and pain with motion in both knees; both knees were injected. [R. 595–99.]

On August 16, 2013, Plaintiff returned to Dr. Poletti complaining of increase of low back pain with pain getting worse; she had slightly positive straight leg raise, and diminished reflexes at the patellar and Achilles tendons; plan was for an updated MRI. [R. 653.]

On October 21, 2013, Plaintiff saw Dr. Niemer for a regular follow up of fibromyalgia; she complained of continued severe fatigue and severe daily pain; a new MRI was ordered and she was to return after this was done. [R. 638–42.]

On January 20, 2014, Plaintiff saw Dr. Niemer for a follow-up fibromyalgia appointment; she complained of increased pain and she felt like her depression was worsening due to her physical limitations; Dr. Niemer noted 15/18 trigger points and decreased range of motion of lumbar spine; he referred her to Dr. Nolan for pain management. [R. 643–47.]

Between December 2013 and April 21, 2014, in an effort to relieve her pain Plaintiff received a series of injections in the cervical, thoracic, and lumbar spine from Dr. Nolan and others at Trident Pain Center. [R. 659–88.]

**RFC Determination and Treating Physician Opinions**

Plaintiff contends the ALJ's RFC determination was error because he did not sufficiently explain how he accounted for the limitations Plaintiff had due to fibromyalgia and DDD, both of which he found to be severe impairments. The record demonstrated that due to those impairments Plaintiff had pains in her neck, hip, knee, and body and suffered fatigue, but the RFC did not accommodate those limitations. Plaintiff further contends that the ALJ also erred by failing to properly weigh several medical opinions. The Court agrees.

### *ALJ's Determinations as to RFC and Medical Opinions*

The ALJ decided Plaintiff's RFC as follows:

> . . . through the date last insured, the claimant had the residual functional capacity to perform light work (light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, as well as sitting, standing, or walking for 6 hours each in an 8-hour workday) as

defined in 20 CFR 404.1567(b) except that she can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs, as well as occasionally stoop, kneel, crouch, and crawl. She can frequently balance.

[R. 18, Finding 5.]

The ALJ recounted some of Plaintiff's testimony regarding her limitations, and he found that her statements were not entirely credible. [R. 19.] The ALJ explained that Plaintiff's activities of daily living were inconsistent with her alleged functional limitations. Specifically, the ALJ stated, "she has admitted that she was able to tend to her personal hygiene, cook, clean, feed her pet, walk her dog, wash laundry, drive, shop, spend time with family and friends, read, watch television, paint, attend church, and go out to eat. . . ." [R. 21.] He found this to be a "fairly active lifestyle." [*Id*.]

The ALJ emphasized the following medical evidence. Dr. Rawe evaluated Plaintiff on May 23, 2007, and he found no weakness in her extremities, no findings to indicate radiculopathy or myelopathy, and her MRI scan indicated a small central C6-7 disc herniation, but difficult to determine if that had any relationship to her pain; she underwent 3 epidural steroid injections without any significant relief of her pain. [R. 19.] On July 17, 2008, Dr. Rawe noted that Plaintiff's lumbar MRI scan did not show any significant disc abnormalities that would be responsible for her pain, there were no surgical options for her low back and leg discomfort, and conservative pain management should be continued. [*Id*.]

The ALJ recounted Plaintiff's MRI of the lumbar spine dated February 26, 2008: it demonstrated mild broad-based bulge eccentric to the left, which extended into the left neural foramen at L4-5, combined with facet hypertrophy, and moderate forminal narrowing. [*Id*.] He explained that Plaintiff's MRI of the pelvis revealed minimal right sided

trochanteric bursitis; the x-ray dated December 23, 2009, showed mild cervical stenosis; the x-ray of the lumbar spine dated August 14, 2012, demonstrated moderate facet arthropathy from L3 through S1 and osteopenia. [*Id*.] The ALJ stated that an MRI of Plaintiff's spine demonstrated mild lumbar dextroscoliosis, moderate spinal stenosis at L4-5, L3-4 mild bilateral foraminal narrowing, and L2-3 mild left foraminal narrowing. [*Id*.]

The ALJ noted Plaintiff saw a chiropractor from November 2011 through May 2012, and she had improved functioning afterwards and was encouraged to perform spinal strengthening exercises; and on April 20, 2012, Plaintiff reported she was exercising on an elliptical approximately 3 times a week. [R. 19–20.]

The ALJ stated that Dr. Niemer of Lowcountry Rheumatology indicated that Plaintiff had been prescribed long term narcotic therapy for her fibromyalgia symptoms; records dated November 1, 2012, indicated that Plaintiff's complaints of arthralgia were stable on her medications; multiple trigger points were present; gait was normal; normal range of motion, muscle strength, and stability in all of her extremities with no pain on inspection; normal flexion and extension of her spine; Plaintiff had a steroid injection to her neck without complications. [R. 20.] The ALJ stated that on January 30, 2013, Plaintiff's fibromyalgia was reported as stable on Cymbalta, and she stopped seeing her psychiatrist of 11 years after her prescription was not called in. [*Id*.]

The ALJ noted that Dr. Poletti evaluated Plaintiff on January 7, 2013; she had a nonantalgic gait; no acute distress; 4/5 grip strength; 4/5 strength in upper extremities; back complaints were not a surgical issue. [*Id*.] On March 14, 2013, Plaintiff saw Dr. Poletti; her straight leg raise was negative bilaterally; she had fibromyalgia type pattern of

symptoms; examination was stable; told to follow up with Dr. Niemer for pain medications. [*Id.*]

The ALJ noted that on October 21, 2013, Dr. Niemer examined Plaintiff. She was in no acute distress; straight leg raise negative; no joint deformities; no motor weakness; normal gait and coordination was intact; Plaintiff had 17/18 trigger points, decreased range of motion of cervical spine and lumbar spine; Plaintiff complained of tenderness and pain with range of motion of her knees; MRI of the cervical spine on November 14, 2013, demonstrated C6-7 central canal stenosis, with no cord compression. [*Id.*] On January 20, 2014, Plaintiff reported that her fibromyalgia was not worsening in severity; Dr. Niemer instructed Plaintiff to gradually increase her regular exercise regime. [*Id.*]

With respect to the medical opinions concerning Plaintiff's physical limitations, the ALJ discussed the following. He assigned significant weight to opinions of "State Agency medical consultants" regarding the physical RFC assessments except he disagreed with the assessment that Plaintiff is limited to standing for 4 hours in 8-hour work day because it was not supported by objective medical evidence, and that she must avoid concentrated exposure to extreme heat and humidity or hazards was not supported because Plaintiff continues to drive despite taking narcotics and benzodiazepine. [R. 21.]

The ALJ stated that on December 23, 2009, Dr. Rojugbokan performed a consultative examination, finding that Plaintiff was in no acute distress; normal gait; able to squat; no muscle atrophy present; no joint abnormalities; reflexes were normal; Plaintiff reported pain with movements and she exhibited decreased range of motion in cervical spine, lumbar spine, knees, and hips. [R. 21.] Dr. Rojugbokan made diagnostic impressions of fibromyalgia, DDD, bipolar, and depression and concluded that Plaintiff was

capable of walking, listening, seeing, hearing, reasoning, and managing her own funds. [*Id*.] The ALJ noted that the physical examination was generally unremarkable but for the subjective complaints. [*Id*.]

The ALJ explained that Dr. Simpson evaluated Plaintiff on August 14, 2012, and despite not documenting adverse objective physical findings, Dr. Simpson reported that Plaintiff had multiple medical problems that made it difficult for her to work full time; the primary issue was pain in her neck and back caused by fibromyalgia, DDD, and scoliosis. [*Id*.] Plaintiff's pain limited her ability to stoop, bend, lift more than 10-20 pounds, or sit/stand for longer than 20 to 30 minutes. [*Id*.] The ALJ gave this opinion little weight because it was not supported by exam notes and appeared to be based on Plaintiff's subjective complaints. [*Id*.]

The ALJ gave little weight to Chiropractor Michael F. Alden's September 17, 2007, report that due to Plaintiff's neck pain, cervical spine degeneration, and fibromyalgia, and based on his treating Plaintiff since January of 1999, he believed Plaintiff was a candidate for disability. [R. 22–23.] The ALJ noted that he is considered an "other source" and not an "acceptable medical source." [*Id*.] He noted that Alden's opinion was an attempt to provide a medical opinion so it was assigned little weight, and it was not supported by any objective physical findings. [*Id*.]

The ALJ explained that Dr. Poletti concluded the first day he met Plaintiff that she was not capable of sitting for any extended period. [R. 23.] And, Dr. Poletti concluded that because Plaintiff was on high doses of narcotic analgesics, that interfered with Plaintiff's ability to retrain for sedentary activity; he observed that Plaintiff had a nonantalgic gait and was in no acute distress. [*Id*.] The ALJ noted that Plaintiff "has been maintained on long-

term narcotic therapy, with limited objective physical findings;" and he did not assign a weight to Dr. Poletti's opinions. [*Id*.]

In summary, the ALJ explained that his RFC determination was supported by "the weight of the evidence of record"; was "generally consistent" with opinions of State Agency consultants; Plaintiff had been consistently encouraged to exercise; and she generally had not reported memory difficulties as a medication side effect to the prescribing physician. [*Id*.]

### *Discussion*

The Administration has provided a definition of RFC and explained what a RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule....

SSR 96–8p, 61 Fed.Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted). The RFC assessment must first identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. *See id.* Only after this identification and assessment may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium,

heavy, and very heavy. *Id.* Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to medically determinable impairments. It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the [claimant] had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.) Age and body habitus (i .e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the [claimant]'s medically determinable impairment(s) and related symptoms) are not factors in assessing RFC....

*Id.* at 34,476.

To assess a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. *Id.* at 34,477. Thus, an ALJ's RFC assessment will necessarily entail assessing the credibility of any alleged limitations, including assessing the credibility of testimony offered by the claimant. And, this Court recognizes that the ALJ is not required to specifically refer to every piece of evidence in his decision, but the ALJ must provide a statement of the case setting forth a discussion of the evidence and explaining reasons upon which the determination is based. *See Reid v. Comm'r*, 769 F.3d 861, 865 (4th Cir. 2014).

In the instant case, although the ALJ determined at Step 2 that Plaintiff suffered from fibromyalgia as a severe impairment, substantial evidence does not support the RFC determination because it did not sufficiently take into consideration Plaintiff's pain and fatigue due to fibromyalgia. SSR 12-2p explains how fibromyalgia should be evaluated in disability claims, and it explains that fibromyalgia is "a 'complex medical condition

31

characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months.'" *See Smith v. Colvin*, C/A No. 1:14-4400-RBH, 2016 WL 1089302, at *5 (D.S.C. March 21, 2016).  Fibromyalgia may be found when a person meets all three of the following criteria: "(1) a history of widespread pain, (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, and (3) evidence that other disorders could cause these repeated manifestations were excluded."  *Id*. at *6.

SSR 12-2p provides that fibromyalgia should be considered in the RFC based on a longitudinal record whenever possible because symptoms can wax and wane such that a person may have "bad days and good days." *Id*. Courts have recognized that fibromyalgia symptoms are entirely subjective, there is no laboratory test to confirm the presence or severity of it, physical examinations usually yield normal results such as a full range of motion, no joint swelling, normal muscle strength and neurological reactions. *Id*. at *7.  And, the nature of fibromyalgia is that a person's ability to perform certain tasks or postural maneuvers on one day does not necessarily reflect an ability to perform those on a sustained basis. *Id*.

Here, the ALJ discounted the medical evidence of record that Plaintiff suffered from fibromyalgia pain and fatigue and portions of medical opinions because they were based on subjective complaints and not objective physical findings.  And, the Court notes that the ALJ relied on the lack of objective physical medical evidence to support his RFC determination which did not accommodate fibromyalgia pain and fatigue.  However, as this Court noted in *Smith*, because fibromyalgia symptoms may be entirely subjective the ALJ should have explained how he factored fibromyalgia subjective pain and fatigue into the

RFC determination. In *Smith*, the ALJ relied exclusively on objective medical evidence to evaluate Smith's fibromyalgia as it related to her RFC, and this Court found that the ALJ failed to account for the subjective nature of fibromyalgia and it could not deduce whether the subjective complaints of fibromyalgia pain were considered in determining the RFC. *See id.* That is precisely what happened with this ALJ's decision, and such was error.

For example, the ALJ discounted Dr. Simpson's medical opinion that Plaintiff had physical limitations caused by fibromyalgia pain because there were no adverse objective physical findings; and he discounted Chiropractor Alden's opinion because it was not based on objective evidence. And, the ALJ did not sufficiently discuss the many medical records of Dr. Rawe, Dr. Niemer, and Dr. Poletti that documented Plaintiff's subjective pain and fatigue, instead noting a few records where Plaintiff had stated her fibromyalgia was not worsening and seemed stable. As explained above, there need not be objective evidence to find fibromyalgia pain. *See Whitney v. Colvin*, C/A No. 9:14-1166-TMC-BM, 2015 WL 3969323, at *9 (D.S.C. June 30, 2015) (recognizing that fibromyalgia patients can have relatively normal objective findings and still be disabled).

Because this Court cannot determine how, if at all, the ALJ sufficiently accounted for the fact that Plaintiff had fibromyalgia pain and fatigue in the RFC determination, remand is required so that the ALJ can build a logical bridge between the evidence and his conclusions. This Court, of course, is mindful that it is the Commissioner's duty to weigh the evidence and that in some circumstances fibromyalgia can be a disabling impairment while in other circumstances people with this condition are not disabled from working. *See id.*

Additionally, this action should be remanded because the ALJ failed to follow the treating physician rule with respect to Dr. Poletti's medical opinions. On January 7, 2013, Plaintiff was seen as a new patient at the Southeastern Spine Institute by Dr. Poletti where he opined that she was incapable of prolonged sitting and that Plaintiff's high doses of narcotics would interfere with her ability to retrain for sedentary activity. Plaintiff continued to see Dr. Poletti several more times. As noted above, the ALJ did not assign Dr. Poletti's medical opinion a weight. By mentioning that Dr. Poletti's opinions were given on the first day he met Plaintiff, this Court is left to guess whether the ALJ was giving Dr. Poletti's opinions little or no weight.

Under the regulations of the Administration, when evaluating the opinion of a treating physician, special consideration is to be given to these opinions based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight.

Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh all medical opinions (treating physicians, consulting examiners, and non-examining chart reviewers) in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, support for the opinions in the

34

medical record, consistency, and whether the treating physician was a specialist. *Id*. at §

404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of

treating physicians and to give "good reasons" in the written decision for the weight given

to a treating source's opinions. SSR 96-2P, 1996 WL 374188, at *5 (S.S.A. July 2, 1996).

Further, "if the RFC assessment conflicts with an opinion of any medical source, the

adjudicator must explain why the opinion was not adopted." SSR 96-8P, 1996 WL 374184,

at *7 (S.S.A. July 2, 1996).

Although the Administration's rules required the ALJ to assign a weight to Dr.

Poletti's medical opinions, he failed to do so. The Court finds that this error is not harmless

because the RFC determination does not account for any restriction on Plaintiff's ability to

sit for extended periods of time. Dr. Poletti gave the opinion that Plaintiff was not capable

of sitting for any extended period of time; thus, this case should be remanded for further

administrative proceedings to allow the ALJ to sufficiently discuss and weigh this medical

opinion using the factors found in 20 C.F.R. § 404.1527(c)(1)-(5). And notably, even if the

ALJ somehow discounted Dr. Poletti's opinions because he formed them on the first day,

the length of a treatment relationship is one of the factors. The ALJ should sufficiently

consider all of the factors and assign a weight to Dr. Poletti's opinions.

**Remaining Allegations of Error**

The Court has found that substantial evidence does not support the ALJ's RFC

determination and the ALJ's failure to sufficiently weigh a treating physician opinion is a

proper basis for remand. Also, on remand the ALJ is directed to consider Plaintiff's

remaining allegations of error.

## CONCLUSION AND RECOMMENDATION

Wherefore, based on the foregoing, it is recommended that the decision of the Commissioner be REVERSED and the case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action consistent with this recommendation.

IT IS SO RECOMMENDED.


                    s/Jacquelyn D. Austin
                    United States Magistrate Judge

April 21, 2017
Greenville, South Carolina